Ibrahim Ismail Bharmal (SBN 366709)
*ibharmal@cair.com*
Dina Chehata (SBN 295596)
*dchehata@cair.com*
Sami Ghanem (SBN 356573)
*sghanem@cair.com*
Council on American Islamic Relations, California (CAIR-CA)
2180 W Crescent Ave, Suite F
Anaheim, CA 92801
(714) 776-1177, ext. 1

Attorney for Petitioner E.R.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.R.,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, SECRETARY, DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, ATTORNEY GENERAL; DAVID VENTURELLA, ACTING DIRECTOR, IMMIGRATION AND CUSTOMS ENFORCEMENT; ANDRES QUINONES, LOS ANGELES FIELD OFFICE DIRECTOR, IMMIGRATION AND CUSTOMS ENFORCEMENT; FERETI SEMAIA, WARDEN, ADELANTO ICE PROCESSING CENTER; DEPARTMENT OF HOMELAND SECURITY; EXECUTIVE OFFICE OF IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondents. | Civil Case No.: 5:26-cv-5079<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Petitioner E.R. (A# 095-041-360, hereinafter "Petitioner"[1]) is a 48-year-old Salvadoran man. Petitioner fled his home country in 1998 after members of criminal gangs attempted to forcibly recruit him and threatened to kill him. After living in the United States for nearly three decades, Petitioner built a life here with his family, which includes his U.S. citizen partner and children, one of whom is a permanent resident and one of whom is a U.S. citizen. Over the last decade, Petitioner held gainful employment and used his earnings to support his family and community here. In every regard, Petitioner is a hard-working and productive member of society with a community that depends on him.

2. For approximately the past thirteen years, Petitioner dutifully attended ICE check-ins in Los Angeles, California, where Respondents repeatedly determined he was neither a flight risk nor danger to the community.

3. In April 2026, Petitioner was suddenly and unlawfully detained at an ICE check-in without a warrant and without an opportunity to contest any reason for his detention in front of a neutral arbiter. Respondents never alleged he was a flight risk

[1] Petitioner respectfully requests that the Court use his initials, rather than his full name, in any opinion in his case, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf; *see also R.N.G. v Semaia*, 5:26-cv-2839-DSR, 2026 WL 2089544, at *1, n.1 (C.D. Cal. July 14, 2026); *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr.,* No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026).

or a danger to the community, either while he was being detained, or at any point during his four-month long detention.

4. This petition challenges Petitioner's detention by Respondents. Respondents' actions violate the Due Process Clause of the Fifth Amendment to the Constitution. the Fourth Amendment, and 8 U.S.C. § 1357(a)(2),1226(a). Petitioner brings this action for habeas, injunctive, and declaratory relief ordering Respondents to immediately release him and to provide him with due process protection if Respondents seek his future removal. In the interim, Petitioner also seeks an order from the Court that he not be removed from this judicial district or the United States, pending disposition of his petition for writ of habeas corpus.

## JURISDICTION

5. Petitioner is in the physical custody of Respondents in Adelanto Detention Facility, an ICE detention center in Adelanto, California, within the Central District of California.

6. This Court has subject matter jurisdiction under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Suspension Clause of the Constitution, and under 28 U.S.C. § 1331 because this action arises under federal law, including the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.

7. This Court may grant relief pursuant to 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C.

§ 1651.

## VENUE

8. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Petitioner is currently detained.

9. Venue also properly lies in the Central District of California under 28 U.S.C. § 1391 because this is a civil action in which Respondents are agencies and officers of the United States, Petitioner was detained in this district when this Petition was filed, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## REQUIREMENTS OF 28 U.S.C. § 2243

10. The habeas statute requires that this Court adjudicate this case quickly. Upon receipt of the petition, the Court must either grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

11. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law…affording as it

does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). Habeas corpus must remain a swift remedy. Importantly, "the statute itself directs courts to give petitions for habeas corpus special, preferential consideration to insure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation modified).

12. Neither 8 U.S.C. § 2241 nor any relevant provision of the Immigration and Nationality Act ("INA") require the exhaustion of administrative remedies before filing a petition for a writ of habeas corpus. *Liang v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). And while courts may require administrative exhaustion as a prudential matter, such discretion applies only when the following factors are met: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of this requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). If any of these factors are not satisfied, then courts may not require administrative exhaustion. *See Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003).

13. The legal questions raised of due process violations are purely constitutional, legal questions and require no agency expertise. *See Miri v. Bondi*, No. 5:26-cv-

00698- MEMF-MAR, 2026 WL 622302, at *11 (C.D. Cal. Mar. 5, 2026) ("Miri was not required to exhaust administrative remedies given the questions of law at issue."). Courts are primarily responsible for resolving such questions, not agencies, and there is no agency mechanism to challenge or appeal Petitioner's re-detention as it relates to its unconstitutional nature. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024).

14. Seeking agency review would further prolong Petitioner's unconstitutional detention, causing him irreparable harm. *See Hernandez v. Sessions,* 872 F.3d 976, 987 (9th Cir. 2017) (holding that, "even if the three Puga factors weigh in favor of prudential exhaustion," courts may waive exhaustion if "pursuit of administrative remedies" would lead to "irreparable injury"). Petitioner has already been detained for over seven months, separated from his U.S. citizen wife and two children. Every day that he remains detained constitutes a violation of his statutory and constitutional rights.

/ / /

/ / /

/ / /

## PARTIES

15. Petitioner E.R. (A# 095-041-360) is from El Salvador and has been in immigration detention since April 2026. He is currently detained at Adelanto Detention Facility in Adelanto, California.

16. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security ("DHS") and is sued in his official capacity. The Secretary of DHS is charged with the administration and enforcement of immigration laws. 8 U.S.C. § 1103(a). Respondent Mullin also oversees ICE, which is responsible for Petitioner's detention. Respondent Mullin has the ultimate custodial authority over Petitioner.

17. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity as the head of the Department of Justice. The Attorney General is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency.

18. Respondent David Venturella is the Acting Director of ICE and is sued in his official capacity. Respondent Venturella leads ICE, which is the agency responsible for Petitioner's detention, and the transfer or removal of noncitizens outside this judicial District and the United States.

19. Respondent Andres Quinones is the Los Angeles Field Office Director of ICE

and is sued in his official capacity. Respondent Quinones is responsible for the detention, transfer, and removal of noncitizens in the Los Angeles district.

20. Respondent Fereti Semaia is the Warden of the Adelanto ICE Processing Center, a facility owned and operated by The GEO Group, Inc., a private prison corporation. Respondent Semaia is sued in his official capacity as the immediate custodian at the facility where Petitioner is detained.

21. Respondent DHS is the federal agency responsible for implementing and enforcing the INA, including the detention, transfer, and removal of noncitizens.

22. Respondent EOIR is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

23. Respondent ICE is the federal agency responsible for the detention, transfer, and removal of noncitizens.

## STATEMENT OF FACTS

### I. Petitioner's Background

24. Petitioner E.R. is a 48-year-old Salvadoran man who has lived in the United States for more than twenty-eight years. E.R. entered the United States without inspection on or about 1998, fleeing gang persecution in El Salvador and real and credible threats to his and his family's lives.

25. Specifically, Petitioner fled his home country after members of criminal

gangs, including Mara Salvatrucha ("MS-13"), attempted to forcibly recruit him. When he refused to join, the gang members threatened to kill him and placed him and his family at risk of imminent harm.

26. Throughout the past three decades, Petitioner has built a full and meaningful life in the United States. He lives in Los Angeles, California with his U.S. citizen partner, near his children, one of whom is a permanent resident and one of whom is a U.S. citizen, as well as his two U.S. citizen grandchildren, ages seven and nine years old.

27. In 2001, Petitioner applied for temporary protected status ("TPS") and obtained a work permit based on this application.

28. Until his detention, Petitioner was employed at a meat packaging facility, where he has worked for the past ten years, using his earnings to provide critical financial support for his family. E.R. is also a dedicated community member: he is an active member of a Catholic congregation in East Los Angeles, where he attends services every Sunday. Throughout his nearly three decades in the United States, Petitioner has built a rich community and network of friends whom he sees regularly and spends time with.

29. Upon information and belief, Petitioner has two minor instances of criminal legal involvement: an assault related charge on or about 2003 and a DUI related charge on or about 2013. In both instances, Petitioner fully complied with the

requirements imposed by each disposition including community service and remedial classes. Notably, Petitioner has had ongoing, routine ICE check-ins *after* these instances, and each check-in occurred without incident. By choosing not to detain Petitioner, Respondents presumably determined these minor instances did not constitute a basis that he was a flight risk or danger to the community.

**II. <u>Petitioner's Frequent ICE Check-Ins and Detention in April 2026</u>**

30. Since approximately 2013, Petitioner has attended ICE check-ins at the Los Angeles ICE office, located at 300 N. Los Angeles St., Los Angeles, CA 90012. Initially, these check-ins occurred every five to eight months but increased in frequency to monthly check-ins starting in or around 2025.

31. Petitioner completed every mandatory check-in over a thirteen-year period without incident and without being detained or arrested. After every check-in, Respondents presumably determined Petitioner was neither a flight risk nor danger to the community.

32. In or around April 2026, Petitioner had a regularly scheduled ICE check-in where he was abruptly detained after his nearly three-decade long residency in the United States. Officers did not assert any ground upon which they believed Petitioner to be a danger to others or at risk of not appearing at his immigration check-ins. Instead, officers merely advised him that he had "no immigration status," despite the fact that Petitioner had already applied for TPS and feared for his life if

he was sent to El Salvador. The officers did not provide any further explanation of why he was being detained.

33. The officers did not provide him with an opportunity to respond to any potential reasons for his re-arrest or the basis for his detention. Petitioner was not given an opportunity in front of a neutral arbiter to show that he was not at risk of missing his immigration reporting requirements or that he was dangerous to the community.

34. Despite not being a flight risk or danger to the community, Petitioner was transferred to the Adelanto ICE Processing Center in Adelanto, California, where he is currently detained. To this day, Petitioner has not been given information about the reason for his detention.

35. Since being detained, Petitioner and his family have been severely and adversely impacted by his continued detention. In addition to experiencing serious emotional distress, Petitioner's family are also struggling to make ends meet and worry about his well-being daily.

## **CLAIMS FOR RELIEF**

This Court should grant this Petition, order Petitioner's immediate release, and prohibit Petitioner's re-detention without future due process protections. The Fifth Amendment requires proper notice and a chance to contest a detention decision and the Fourth Amendment requires that Petitioner is served with a properly executed

warrant with sufficient probable cause prior to being detained. These procedures were not followed in this case. Further, Respondents' detention does not serve a statutory or constitutional purpose. Respondents detained Petitioner without making any of the necessary showings that his detention is justified. Accordingly, Petitioner's rights were violated, requiring his immediate release from custody and permanent due process protections.

## COUNT ONE

**Violation of the Fifth Amendment to the U.S. Constitution**

**Procedural Due Process**

36. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

37. Respondents have deprived Petitioner of his liberty without procedural protections required by the Due Process Clause of the Fifth Amendment, specifically a pre-deprivation hearing prior to his detention.

38. Civil detention and immigration detention must comport with the Due Process Clause of the Fifth Amendment and can violate a noncitizen's due process unless it is accompanied by strong procedural protections to guard against the erroneous deprivation of liberty, including a hearing before a neutral decisionmaker on the basis for detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001); *Foucha v. Louisiana*, 504 U.S. 71, 81–83 (1992); *Kansas v. Hendricks*, 521 U.S. at

346, 364–69 (1997); *United States v. Salerno,* 481 U.S. 739, 750–52 (1987).

39. Even for deprivations of liberty far less serious than detention, the Due Process Clause requires that individuals receive notice and an opportunity to be heard in a meaningful manner and at a meaningful time before the government may deprive them of liberty. *E.g., Mathews v. Eldridge*, 424 U.S. 319, 348 (1976); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC-EMC, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (in finding that due process required a hearing before the Government re-detained petitioner, who had a protected liberty interest in his continued release on recognizance, the court held that "[t]he constitution typically requires some kind of a hearing before the State deprives a person of liberty or property, particularly because the loss of liberty cannot be fully compensated after the fact.").

40. A pre-deprivation hearing is also required in the analogous, criminal context when individuals who have been released on criminal parole or probation have their liberty revoked. *Morrissey v. Brewer*, 408 U.S. 471, 480–86 (1972) (parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation). Numerous district courts have extended these principles to the immigration detention context. E.g., *F.M.V. v. Wofford*, No. 1:25-cv-01381-KES-SAB (HC), 2025 WL 3083934 (E.D. Cal. Nov. 4, 2025) (granting a motion for a temporary restraining order that sought immediate release from detention and an injunction prohibiting the government from re-detaining the petitioner unless it first provides him with a hearing before a neutral

adjudicator).

41. Courts analyze Fifth Amendment procedural due process claims in two steps. First, the Court must determine if Petitioner has a protected interest in his continued liberty. *Doe v. Becerra,* 787 F.Supp.3d 1083, 1090—93 (E.D. Cal. 2025). If so, the Court then uses the three-factor *Mathews* framework to determine what process is due. *Id.* at 1093. Here, Petitioner has a weighty liberty interest and is owed due process in the form of a pre-deprivation hearing in front of a neutral arbiter where Respondents bear the burden to illustrate why Petitioner's detention is now justified.

42. Petitioner has a liberty interest in his near three-decade long release, especially and particularly after Petitioner's recurring ICE check-ins since 2013. Since arriving to the United States almost thirty years ago, Petitioner has been a productive member of his community. For the last decade, he has worked hard at a meat packaging facility to provide for his U.S. citizen and permanent resident family members who rely on him. Petitioner has attended church regularly in East Los Angeles and has built a community of friends whom he spends time with regularly.

43. Petitioner has never missed an ICE check-in in the past thirteen years and has followed all check-in requirements. After each check-in prior to his unlawful detention, Respondents released him and determined that Petitioner was not a flight risk or a danger to the community. *Domingo v. Kaiser*, No. 25-cv-05893, 2025 WL 1940179, at *2 (N.D. Cal. July 14, 2025) (when immigration agents release the

petitioner "they determined that he did not pose a flight risk or danger to the community"); *Ortiz v. Warden,* No. 5:26-cv-03915-MR, 2026 WL 2138601, at *3, (C.D. Cal. July 22, 2026)(determining that after an initial release, immigration agents must show that a noncitizen is a flight risk or a danger to community before detaining them at an appointment); *Amponsah v. Warden,* No. 5:26-CV-03424-MAR, 2026 WL 2374128, at *3 (C.D. Cal. July 21, 2026)(same); *see also Guiterrezvasqeuz v. Mullin,* No. 5:26-cv-04025-KES, 2026 WL 2277540, at *3( C.D. Cal. Aug. 6, 2026)(concluding that a decision to not detain a noncitizen creates a promise that they will not be detained absent a showing of danger or flight risk); *Khartionova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441 at *2 (N.D. Cal. Feb. 25, 2026) (holding "[t]he government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious"); *Kalkan v. Chestnut* (E.D. Cal., Mar. 20, 2026, No. 1:26-CV-02028-DAD-EFB), 2026 WL 788112, at *1 (holding that a decision not to detain is "'based on an evaluation[,]' allows for 'a relatively normal life[,]' and as a result the parolee or petitioner 'relied on at least an implicit promise' that the parole or decision not to detain will be revoked only if he fails to live up to the applicable 'conditions.'")(citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))).

44. Thus, over time, Petitioner has accrued a weighty liberty interest due to his enduring family and community ties.

45. Because Petitioner possesses a liberty interest in his release, the Court must use the *Mathews v. Eldridge* balancing test to determine what due process he is owed: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (applying *Mathews* in immigration detention context). Here, the *Mathews* factors each weigh heavily in Petitioner's favor.

46. ***First,*** Petitioner's detention without notice or a pre-deprivation hearing directly infringed upon his core liberty interest protected by the Fifth Amendment. *Zadvydas*, 544 at 693. "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)(concluding that a noncitizen detainee has a substantial private interest in remaining out of custody); *Martinez v. Noem*, 821 F.Supp.3d 1183, 1190—91 (C.D. Cal. 2026)(same).

47. Here, Petitioner's private interests are substantial. He has built a meaningful and vibrant life in Los Angeles, California, where he had been gainfully employed

for a decade and where he has lived free from physical restraints for the past fifteen years. He has regularly attended all scheduled ICE check-ins and has not missed one in the past thirteen years. He has lawful permanent resident and U.S. citizen family members, from whom he has been separated for the past four months. He has been deprived of his physical liberty, which has prevented him from supporting his family who depend on him and who are suffering significant financial and emotional distress because of his detention. Detention has also cut Petitioner off from the livelihood he built over the past decade, jeopardizing his future economic stability and earning potential. Thus, Petitioner has developed a specific and weighty private liberty interest in remaining out of custody. *See Garro Pinchi*, 792 F. Supp. 3d 1025, 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases); *Padilla v. Bowen*, No. 2:25-CV-10780-CAS-SK, 2025 WL 3251368, at *1–2, 10 (C.D. Cal. Nov. 21, 2025) ("That Petitioner is deprived of his right to live with his family and to work underscores Petitioner's 'weighty' liberty interest in remaining out of custody.").

48. ***Second,*** the risk of erroneous determination is high "absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration

proceedings or to prevent danger to the community." *Perez Bueno v. Janecka* , 2026 WL 309934, at *4, , at *9 (citing Zadvydas, 533 U.S. at 693-94); *see also Chen v. Noem*, No. 5:26-CV-00397-SSS-DTB, 2026 WL 425694, at *5 (C.D. Cal. Feb. 13, 2026); *Larios v. Albarran*, No. 25-cv-08799, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard."); *Ramos-Maldonado v. Semaia*, No. 26-cv-1202-SSS-AS, 2026 WL 790788, at *4 (C.D. Cal. Mar. 18, 2026) ("In complying with Respondents' conditions of Petitioner's release, Petitioner was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm."); *Gudavasov v. Marin*, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2 (C.D. Cal. Mar. 9, 2026) ("[T]he Court finds that there is significant risk of erroneous deprivation given that Petitioner did not receive a pre-detention on hearing to determine whether there is valid basis for detention, and considering that Petitioner asserts he has complied with all terms of his parole and has no criminal record.").

49. Here, Petitioner has received inadequate due process since being detained in April 2026. In fact, he has been given no process at all as ICE officers detained him without any opportunity to contest his detention. Petitioner has established himself

in Los Angeles, California for the past fifteen years, where he has held steady employment for the past ten years. He has attended regular ICE check-ins for the past thirteen years and has never before been deemed a fight risk or a danger by ICE in his check-ins. Upon his detention in April 2026, Petitioner was never told that he poses a flight risk or danger to the community. Petitioner has not been given an opportunity to refute the reasons for his detention in front of a neutral arbiter.

50. ***Third***, the government's interest is low because it is not burdensome to institute a pre-deprivation hearing as they are routinely provided in immigration detention contexts. *See Castaño v. Blanche,* Case No. EDV 26-2706-AS, 2026 WL 1915720, at *4, (C.D. Cal. June 30, 2026) (collecting cases); *See Hernandez v. Sessions,* 872 F.3d 976, 994 (9th Cir. 2017) (discussing the decreasing government interest in detention when a pre-deprivation hearing is available).

51. Further, Respondents lack any interest in detaining Petitioner since ICE began implementing regular check-ins, which Petitioner has not missed for the past thirteen years. *E.g., Hernandez,* 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").

52. Respondents cannot identify any reason they could not have provided Petitioner with notice and an opportunity to be heard prior to detention, especially

given that Petitioner regularly attended frequent, consistent, and as of late, monthly check-ins without fail and was never identified by ICE as a flight risk or danger to the community.

53. Because each *Mathews* factor tips in favor of Petitioner, Petitioner was due a pre-deprivation hearing before a neutral arbiter where Respondents bear the burden of demonstrating he is either a flight risk or a danger to the community.

54. Accordingly, Petitioner's immediate release is the appropriate remedy. Releasing Petitioner is narrowly tailored to the specific wrong because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Courts in the Central District have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. *See, e.g., Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23 2026); *Nieves v. Mullin*, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at * 4 (C.D. Cal. Apr. 1, 2026); *Fernandez v. Semaia*, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7 (C.D. Cal. Jan. 13, 2026); *R.N.G. v. Semaia,* Case No. 5:26-cv-2839-DSR, 2026 WL 2089544, at *7 (C.D. Cal. July 14, 2026).

55. Further, because Petitioner was entitled to and deprived of a pre-detention hearing before a neutral adjudicator, a post-deprivation hearing cannot remedy this due process violation and thus due process requires Petitioner's immediate release.

*R.N.G.,* 2026 WL 2089544, at *7 (C.D. Cal. July 14, 2026); , *Mumaev v. Semaia*, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); *R.G.P. v. Mullin,* Case No. 5:26-cv-0431-SSS-KES, at 10 (C.D. Cal. Aug. 12, 2026)("[A]llowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing."); *see also Esmail v. Noem,* Case No. 2:25- cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025); *Garro Pinchi*, 792 F. Supp. 3d at 1035; *Domingo v. Kaiser*, No. 25-CV-05893-RFL, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025*; E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *Medrano-Rocha*, 2026 WL 411355, at *6; *Pelayo Ramirez v. Chestnut*, No. 1:26-CV-00529-DC-CSK, 2026 WL 766565, at *1 (E.D. Cal. Mar. 18, 2026); *Colina-Meira v. Lyons*, 1:25-CV-1716-CSK, 2025 WL 3769424, at *6 (E.D. Cal. Dec. 31, 2025); *Gudavasov*, 2026 WL 712827, at *3; *R.R.T.*, 2026 WL 1229181, at *4.

## COUNT TWO

**Violation of 8 U.S.C. § 1226(a), 1357(a)(2) & 8 C.F.R. § 287.8(c)**

**Warrantless Arrests Without Probable Cause of Flight Risk**

56. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

57. 8 U.S.C. § 1226(a) and its implementing regulations govern the process in which Respondents may detain Petitioner for civil, immigration detention including pre-arrest, warrant requirements

58. Ordinarily, immigration officials must first obtain an administrative warrant before effectuating the civil arrest of a noncitizen. *See Arizona v. U.S.*, 567 U.S. 387, 408 (2012) ("If no federal warrant has been issued, those officers have more limited authority.") *Id*. Pursuant to 8 U.S.C. § 1226(a), the arrest of a noncitizen must be made "[o]n a warrant issued by the Attorney General." *Id*.

59. Respondents may only conduct a warrantless arrest of noncitizens under narrow circumstances. "Put simply, immigration enforcement officers may conduct a warrantless civil immigration arrest only if they have probable cause to believe that a person is both in the United States unlawfully and an escape risk." *Urias v. Semaia,* Case No. 5:26-cv-02753-DTB, 2026 WL 1710375, at *5 (C.D. Cal. June 10, 2026) (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.,* 811 F.Supp.3d 1, 30 (D.D.C. 2025)).

60. Officials may conduct a warrantless arrest "only if the officer…has reason to believe that [1] the alien so arrested is in the United States in violation of any . . . law or regulation and [2] is likely to escape before a warrant can be obtained for his arrest.'" *Escobar Molina*, 811 F. Supp. 3d at 30 (D.D.C. 2025) (quoting 8 U.S.C. § 1357(a)(2)).

61. Pursuant to 8 C.F.R. § 287.8(c)(2)(i)-(ii), "an arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States" and "that the person is likely to escape before a warrant can be obtained." Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010).

62. Although 8 U.S.C. § 1357(a)(2) uses the phrase "reason to believe," this has been construed to be "the equivalent of probable cause," since "aliens in this country are sheltered by the Fourth Amendment in common with citizens[.]" *Au Yi Lau v. U.S. Immigr. & Naturalization Serv*., 445 F.2d 217, 222-23 (D.C. Cir. 1971); *see also Tejeda-Mata v. Immigr. & Naturalization Serv*., 626 F.2d 721, 725 (9th Cir. 1980) ("The phrase 'has reason to believe' [in § 1357] has been equated with the constitutional requirement of probable cause.").

63. When Respondents violate the warrant requirements, the subsequent arrests are unlawful and require immediate release. *See, e.g., Vasquez Perdomo v. Noem*, 790 F.Supp.3d 850 (C.D. Cal. 2025) (finding federal immigration agents' policy and practice of warrantless arrests without individualized flight-risk determinations was likely unconstitutional); *Urias v. Semaia,* No. 5:26-CV-02753-DTB, 2026 WL 1710375, at *6 (C.D. Cal. June 10, 2026)(finding a warrantless arrest under section

1226(a) as unlawful and ordering immediate release); *Moreno Cristin v. Armant*, No. 5:26-cv-04024-DTB, Dkt # 10(C.D. Cal. Jul. 29, 2026)(same); *Navarro Gomez v. Wofford,* No. 1:26-CV-05299 (VC), 2026 WL 2065708, at *3 (E.D. Cal. July 16, 2026)(same); *V.M. v. Albarran*, No. 1:26-cv-01280-TLN-DMC, 2026 WL 622185, at *3(E.D. Cal. Mar. 5, 2026) (Chief Judge Nunley) (same); *Galvez Pantoja v. DHS,* No. 5:26-CV-02084-JDE, 2026 WL 1601897, at *4 (C.D. Cal. June 1, 2026)(similar); *J.A.C.P. v. Wofford*, 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) ("issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)"); *Chogllo Chaffa v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (same);*Gregorio v. Larose*, No. 3:26-CV-03918-RBM-SBC, 2026 WL 2059095, at *1 (S.D. Cal. July 16, 2026) *Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026); *Lopez-Sanchez v. Blanche,* No. 8:26CV264, 2026 WL 1759557, at *3 (D. Neb. June 18, 2026); *Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-00479-SDN, 2025 WL 2783642, at *5 (D. Me. Sept. 30, 2025);

64. A post-deprivation hearing is inadequate and cannot remedy a deprivation already suffered. Review before an immigration judge is a second layer of process that presupposes a first. "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior

to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." *Garcia-Maya*, 2026 WL 1965886, at 8 (*quoting Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)). Petitioner's detention "was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a)." *Id.* (*quoting Rodriguez-Acurio v. Almodovar**, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)).

65. Even a lawful and prompt bond hearing would come too late. *See supra* ¶¶ 54—55. "Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A.T.B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *see also Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) ("if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid"); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025).

66. Here, Respondents did not issue Petitioner an arrest warrant when they detained him at his ICE check-in in April 2026. Further, there was no basis to find probable cause that he posed a risk of escape. Petitioner resided at the same fixed address for several years, built a robust life with his partner, children, and

grandchildren, regularly attended church, worked at the same company for a decade, and dutifully attended every ICE check-in that was required of him for more than a decade. "He could be readily found at his long-standing place of residence or employment." *Urias,* 2026 WL 1710375, at *6; *see Escobar Molina*, 811 F. Supp. 3d at 31 ("Courts have also made the self-evidence findings that the likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties."); *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 890 (S.D. Ohio 2016) (finding no flight risk where the defendant had a stable job, lived with his fiancé, and helped her pay the rent on their home, and helped her raise her two kids); *United States v. Bautista-Ramos,* Case No. 18-CR-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct. 15, 2018) (finding no flight risk where ICE encountered the defendant at his place of employment, "a place he routinely visited," and information about the defendant, including long-term residence, employment, and United States citizen wife and daughters, supported his having strong ties to the community).

67. When ICE fails to follow the procedures authorizing detention under § 1226 (a), "release is necessary to return him to the status quo" *Urias,* 2026 WL 1710375, at *6 (*quoting Nazarian v. Noem*, Case No. 5:25-cv-KK-DSR, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). Here, the last uncontested status is Petitioner's release on his prior conditions of release and his release from custody is the appropriate

remedy. *Id; see also Landa Zaragoza, et al. v. Chestnut, et al*. 1:26-cv-05294-EJD (E.D. Cal. ordered July 15, 2026), citing *Romero-Perez v. Blanche*, No. 2:26-CV-01708-RFB-BNW, 2026 WL 1724752, at *3 (D. Nev. June 15, 2026). *See also*, *Urias v. Fereti Semaia,* 5:26-cv-02753-DTB (E.D. Cal. June 10, 2026) (Habeas granted and Petitioner ordered immediately released after warrantless arrest with no probable cause to believe Petitioner posed a risk of escape).

## **COUNT THREE**

### **Violation of Fifth Amendment of the U.S. Constitution**

### **Substantive Due Process, No Basis for Detention**

68. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

69. The Due Process Clause of the Fifth Amendment forbids the government from depriving individuals of their right to be free from unjustified deprivations of their liberty. U.S. CONST. AMEND. V.

70. To comport with due process, immigration detention must "bear [a] reasonable relation to the purpose for which the individual [was] committed." *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Here, Petitioner's ongoing detention since April 2026 is in violation of his substantive due process because his detention has no reasonable relation to any statutory purpose.

71. Detention pursuant to 8 U.S.C. § 1231, like other provisions of the INA which authorize civil detention, has only two regulatory goals: "mitigating flight risk, or ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community" until such proceedings have been completed and the noncitizen has been removed. *Id.* (internal quotation omitted) (citing 8 U.S.C. § 1231(a)(6)).

72. After Petitioner's first ICE check-in in 2013, ICE officers released him after finding that he was neither a danger nor a flight risk. Respondents made the determination that Petitioner was not a flight risk or a danger to the community at each of Petitioner's ICE check-ins over a thirteen year period by allowing him to remain in the United States. Even though Petitioner had not been previously detained prior to April 2026, he still possesses a liberty interest.

73. Petitioner has complied with all requirements ICE has imposed on him. There is no evidence that he is now a flight risk or a danger to the community.

74. Petitioner's detention, without any individualized evidence that that he is a flight risk or danger, violates his substantive due process rights. His detention serves no statutory purpose. Accordingly, Petitioner's detention does not serve a constitutional purpose and is in violation of his substantive due process rights.

75. Petitioner must be immediately released from detention. See 28 U.S.C. § 2243 (the habeas shall "dispose of the matter as law and justice require"); *Preiser v.*

*Rodriguez*, 411 U.S. 475, 484 (1973) (finding "that the traditional function of the writ is to secure release from illegal custody").

**PRAYER FOR RELIEF**

Wherefore, Petitioner (A# 095-041-360) prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;
2) Enjoin Petitioner's removal or transfer outside of this judicial district and the United States during the pendency of his removal proceedings;
3) Declare Petitioner's detention unlawful;
4) Declare that any re-detention of Petitioner, absent individualized determination, violates the Due Process Clause of the Fifth Amendment;
5) Issue a writ of habeas corpus ordering Petitioner's immediate release from custody, with the same conditions in place at the time of his unlawful detention, and return all property taken from him during his arrest and processing into detention, including but not limited to his passport, state-issued I.D., employment authorization document, and cell phone;
6) Enjoin Respondents from re-detaining Petitioner without first providing a pre-deprivation hearing before a neutral adjudicator where the government demonstrates by clear and convincing evidence that his re-detention is justified by showing he is either a flight risk or danger to the community; Petitioner

must be allowed to have counsel present at such a pre-deprivation hearing and given at least 10-days notice;

7) Enjoin Respondent from re-detaining Petitioner without first following all procedures set forth in 8 U.S.C § 1226 and any other applicable statutory and regulatory procedures, including securing and presenting a valid warrant finding probable cause;

8) Award Petitioner's attorney reasonable fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

9) Grant any further relief that this Court may deem fit and proper.

Dated: September 2, 2026

Respectfully Submitted,

*/s/ Ibrahim I. Bharmal*

Ibrahim Ismail Bharmal (SBN 366709)

*/s/ Dina Chehata*

Dina Chehata (SBN 295596)

*/s/ Sami Ghanem*

Sami Ghanem (SBN 356573)

Attorneys for Petitioner

# VERIFICATION

I am submitting this verification on behalf of Petitioner because I am his attorney in the instant habeas petition. As his attorney, I hereby verify that the factual statements made in this *Petition for Writ of Habeas Corpus* are true and correct to the best of my knowledge.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge based on communication and conversations with the individual referenced throughout the *Petition*.

Executed on September 2, 2026 in Anaheim, California.

*/s/ Ibrahim I. Bharmal*

Ibrahim Ismail Bharmal (SBN 366709)
Attorney for Petitioner

**<u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 11-6.2</u>**

The undersigned, counsel of record for Petitioner, certifies that this *Petition for Writ of Habeas Corpus* complies with Local Rule 11-6.1.

Dated: September 2, 2026

Respectfully Submitted,

*<u>/s/ Ibrahim I. Bharmal</u>*

Ibrahim Ismail Bharmal (SBN 366709)
Attorney for Petitioner