UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

E.R.,

Petitioner,

v.

MARKWAYNE MULLIN, et al,

Respondents.

Case No. 5:26-cv-05079-DTB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**I.**

**PROCEEDINGS**

On September 2, 2026, petitioner E.R. ("Petitioner"), through counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Docket No. 1).

Pursuant to the General Order 26-05 and Briefing Schedule (Docket No. 5), Respondent was to file an Answer to the Petition on or before September 10, 2026.

On September 11, 2026, Petitioner filed a Notice of Respondents' Failure to File Notice of Appearance and Responsive Pleadings. (Docket No. 7).

/ / /

As Respondent had not filed an Answer, on September 15, 2026, the Court issued a text only entry requesting Respondents to email Chambers within 24 hours of the text entry to advise if Respondents intended to file a notice of appearance and an answer. If Respondents would not be filing a notice of appearance and an answer, the Court requested that Respondents file the I-213 for Petitioner within 24 hours of the request.

On September 16, 2026, Respondents filed Petitioner's Form I-213. (Docket No. 11)

Also on September 16, Petitioner filed a Reply to Respondents' I-213 Filing. (Docket No. 12).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## RELEVANT BACKGROUND[1]

Petitioner is a 48-year-old Salvadoran man who has lived in the United States for more than twenty-eight years. (Petition at ¶ 24). Petitioner entered the United States without inspection in or about 1998, fleeing gang persecution in El Salvador and real and credible threats to his and his family's lives. (Id.).

Specifically, Petitioner fled his home country after members of criminal gangs, including Mara Salvatrucha ("MS-13"), attempted to forcibly recruit him. (Id. at ¶ 25). When he refused to join, the gang members threatened to kill him and placed him and his family at risk of imminent harm. (Id.).

Throughout the past three decades, Petitioner has built a full and meaningful life in the United States. (Id. at ¶ 26). He lives in Los Angeles, California with his U.S. citizen partner, near his children, one of whom is a permanent resident and one

[1] The Background is taken primarily from the Petition.

of whom is a U.S. citizen, as well as his two U.S. citizen grandchildren, ages seven and nine years old. (Id.).

In 2001, Petitioner applied for temporary protected status ("TPS") and obtained a work permit based on this application. (Id. at ¶ 27).

Until his detention, Petitioner was employed at a meat packaging facility, where he has worked for the past ten years, using his earnings to provide critical financial support for his family. (Id. at ¶ 28). Petitioner is also a dedicated community member: he is an active member of a Catholic congregation in East Los Angeles, where he attends services every Sunday. (Id.). Throughout his nearly three decades in the United States, Petitioner has built a rich community and network of friends whom he sees regularly and spends time with. (Id.).

Upon information and belief, Petitioner has two minor instances of criminal legal involvement: an assault related charge on or about 2003 and a DUI related charge on or about 2013. (Id. at ¶ 29). In both instances, Petitioner fully complied with the requirements imposed by each disposition including community service and remedial classes. (Id.). Notably, Petitioner has had ongoing, routine ICE check-ins following these instances, and each check-in occurred without incident. (Id.). By choosing not to detain Petitioner, Respondents presumably determined these minor instances did not constitute a basis that he was a flight risk or danger to the community. (Id.).

Since approximately 2013, Petitioner has attended ICE check-ins at the Los Angeles ICE office, located at 300 N. Los Angeles St., Los Angeles, CA 90012. (Id. at ¶ 30). Initially, these check-ins occurred every five to eight months but increased in frequency to monthly check-ins starting in or around 2025. (Id.).

Petitioner completed every mandatory check-in over a thirteen-year period without incident and without being detained or arrested. (Id. at ¶ 31). After every

check-in, Respondents presumably determined Petitioner was neither a flight risk nor danger to the community. (Id.).

In or around April 2026, Petitioner had a regularly scheduled ICE check-in where he was abruptly detained after his nearly three-decade long residency in the United States. (Id. at ¶ 32). Officers did not assert any ground upon which they believed Petitioner to be a danger to others or at risk of not appearing at his immigration check-ins. (Id.). Instead, officers merely advised him that he had "no immigration status," despite the fact that Petitioner had already applied for TPS and feared for his life if he was sent to El Salvador. (Id.). The officers did not provide any further explanation of why he was being detained. (Id.).

The officers did not provide him with an opportunity to respond to any potential reasons for his re-arrest or the basis for his detention. (Id. at ¶ 33). Petitioner was not given an opportunity in front of a neutral arbiter to show that he was not at risk of missing his immigration reporting requirements or that he was dangerous to the community. (Id.).

Despite not being a flight risk or danger to the community, Petitioner was transferred to the Adelanto ICE Processing Center in Adelanto, California, where he is currently detained. (Id. at ¶ 34). To this day, Petitioner has not been given information about the reason for his detention. (Id.).

Since being detained, Petitioner and his family have been severely and adversely impacted by his continued detention. (Id. at ¶ 35). In addition to experiencing serious emotional distress, Petitioner's family are also struggling to make ends meet and worry about his well-being daily. (Id.).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const.,

Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

/ / /

/ / /

/ / /

/ / /

# IV.

# DISCUSSION

## A. Habeas Relief is Warranted.

As noted, Respondents have elected not to appear in this action, despite the Court's order to do so.

Federal courts must decide cases based on the arguments the parties present. See United States v. Sineneng-Smith, 590 U.S. 371, 375–76 (2020); Greenlaw v. United States, 554 U.S. 237, 243 (2008). That rule follows from the party presentation principle: "In our adversarial system of adjudication . . . in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Sineneng-Smith, 590 U.S. at 375 (2020) (cleaned up). The Supreme Court has reminded the lower courts that they are "essentially passive instruments of government" who must adhere to the narrow questions raised by the parties. Margolin v. Nat'l Assoc. of Immigration Judges, 146 S. Ct. 1285, 1288 (2026) (citation omitted).

Here, Petitioner raises, *inter alia*, a claim that his detention without any pre-deprivation process violated his procedural due process rights and that the proper remedy is his release from custody. (Docket No. 1 at 12-21). This claim has been found to be a basis for habeas relief by numerous courts in this Circuit, including this one. See, e.g., Eddier David Taborda Loero v. James Janecka, et al, No. 5:26-cv-03713-DTB (Order Granting Petition for Writ of Habeas Corpus) ( (C.D. Cal. July 15, 2026).

Respondents elected not respond to the Petition and to Petitioner's claims, including his procedural due process claim. Respondents are represented by competent counsel with full access to all the relevant facts concerning Petitioner's detention, and they offered no factual or legal basis to reject his claim. Their failure

to do so constitutes a forfeiture of the arguments they could have made in support of their position. See Martinez v. Sessions, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the opposing party] raised."); Am. Int'l Enters., Inc. v. F.D.I.C., 3 F.3d 1263, 1266 n.5 (9th Cir. 1993) ("Issues raised in the brief that are not supported by argument are deemed abandoned."). And where the opposing party offers no reason to reject a particular claim, the Court is not duty-bound to search for a reason on their behalf - indeed, the party presentation principle requires the court to refrain from doing so. Sineneng-Smith, 590 U.S. at 375-76 ("[A]s a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (cleaned up).

As such, the Court need not decide whether it agrees with the merits of Petitioner's claims in all respects; it simply acknowledges that his claim that his detention is without lawful authority is unrefuted by Respondents. As numerous other courts have found in such circumstances, the Petition should therefore be granted based on Respondent's failure to oppose the primary relief sought. See, e.g., Barajas-Bautista v. Warden, Desert View Annex, No. 5:26-cv-03135-SK, 2026 WL 2058433, at *2 (C.D. Cal. July 13, 2026) (granting petition and ordering release where the respondent did not oppose granting a bond hearing but did not address the petitioner's remaining claims; noting "Respondents, who alone possess petitioner's A-file, his Form I-213, and his criminal history record, filed nothing and denied nothing"); Soleimani v. Larose, No.: 25-cv-3082-DMS-DEB, 2025 WL 3268412, *3 (S.D. Cal. 2025) (granting habeas petition where government's answer to the petition did not respond to all claims in the petition, including a Fifth Amendment due process claim); Singh v. Chiang, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, *4 (C.D. Cal. 2025) (construing government's failure to oppose argument

raised by habeas petitioner as a concession); N-E-M-B v. Wamsley, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

Accordingly, because Respondents have not met their burden "to show cause why the writ should not be granted," 28 U.S.C. § 2243, the Court grants the Petition and orders Petitioner to be released.

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that Judgment be entered: (a) Granting the Petition; (b) ordering Respondents to immediately release Petitioner E.R. (A# 095-041-360) from custody subject to the same conditions (if any) that he was subject to at the time he was arrested and detained; (c) ordering Respondents to return all property confiscated from Petitioner (if any) during his arrest and processing into detention; (d) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without complying with all applicable statutes and regulations; and (e) ordering Respondents to file a status report within two (2) business days of the date of this Order to confirm that Petitioner's release from custody is subject to the same conditions (if any) that he was subject to at the time he was arrested and detained.

DATED: September 18, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE